IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT A. CABASUG and JOYCE C. CABASUG, <br><br> Plaintiffs, <br><br> vs. <br><br> CRANE COMPANY, et al., <br><br> Defendants. <br> _____ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL NO. 12-00313 JMS/BMK <br><br> ORDER (1) GRANTING MAXIM EVAPORATORS, LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' THIRD AMENDED COMPLAINT FILED AUGUST 6, 2013, DOC. NO. 688; AND (2) GRANTING DEFENDANT VIAD CORP'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 694; ATTACHMENT "A" |

**ORDER (1) GRANTING MAXIM EVAPORATORS, LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' THIRD AMENDED COMPLAINT FILED AUGUST 6, 2013, DOC. NO. 688; AND (2) GRANTING DEFENDANT VIAD CORP'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 694; ATTACHMENT "A"**

## I. INTRODUCTION

On June 1, 2012, Plaintiffs Robert and Joyce Cabasug ("Plaintiffs")

filed this action asserting claims for negligence, strict liability, breach of warranty,

loss of consortium, and punitive damages based on a failure to warn theory against

twenty-five Defendants that allegedly manufactured, sold, and/or supplied various

products containing asbestos to the United States Navy.  As alleged in the Third

Amended Complaint ("TAC"), Robert Cabasug ("Cabasug") was exposed to

asbestos contained in Defendants' products while working as a pipefitter and

nuclear engineer at the Pearl Harbor Naval Shipyard ("PHNS") from 1973 through 2006, causing him to develop mesothelioma and other asbestos-related diseases.

Plaintiffs have named Defendants Maxim Evaporators, LLC ("Maxim") and Viad Corp. ("Viad") as successors in interest to companies that allegedly included asbestos components in their products to which Cabasug was exposed -- Maxim's alleged predecessor is Emhart Manufacturing Company ("Emhart"), and Plaintiffs assert that Viad's alleged predecessors include Griscom-Russell Company ("GRC"), and "Baldwin-Lima-Hamilton" ("BLH").  Maxim and Viad both argue that Plaintiffs have failed to establish that Cabasug was exposed to any asbestos components supplied or manufactured by Emhart, GRC, or any BLH entity (there are several BLH-related entities), and in any event Maxim and Viad are not the legal corporate successors to these companies.  Based on the following, and applying the causation principles outlined in the court's November 26, 2013 Order, *see Cabasug v. Crane Co.*, 2013 WL 6212151 (D. Haw. Nov. 26, 2013), the court finds that Plaintiffs have failed to establish a genuine issue of material fact that Cabasug was exposed to any asbestos manufactured or supplied by any predecessor companies to Maxim or Viad and therefore GRANTS Maxim's and Viad's Motions for Summary Judgment.

2

## II.  <u>BACKGROUND</u>[1]

On June 1, 2012, Plaintiffs filed this action alleging claims for

negligence, strict liability, breach of warranty, loss of consortium, and punitive

damages against Defendants based on their design, manufacture, sale, and/or

supply of various products containing asbestos to the United States Navy.  The

TAC asserts that:

> Defendants and each of them, negligently designed,
> manufactured, selected materials, assembled, inspected,
> tested, maintained for sale, marketed, distributed, leased,
> sold, recommended and delivered the hereinabove
> described certain asbestos products in such manner so as
> to cause said asbestos products to be in a defective and
> unsafe condition, and unfit for use in the way and manner
> such products are customarily treated, used and
> employed; and, that said Defendants, and each of them,
> negligently failed to discover said defects and/or failed to
> warn and/or adequately test and give adequate warning of
> known or knowable dangers of asbestos products to users
> of said products of said defects and dangers and/or failed
> to find or use a safe substitute insulating material.

Doc. No. 661, TAC ¶ 7.

On August 30, 2013, Maxim and Viad filed their Motions for

Summary Judgment.  Doc. Nos. 688, 694.  Because Viad's Motion raises both

issues of causation and successor liability, and several other Defendants filed

---

[1]  The court has already recited the basic facts of this action in previous orders and does not reiterate them here.  In its analysis, the court outlines specific facts relevant to the issues raised.

Motions for Summary Judgment regarding causation only, the court ordered that briefing on Viad's Motion be bifurcated. *See* Doc. No. 697.  Plaintiffs filed their Opposition to Viad's Motion regarding causation on October 14, 2013, Doc. No. 714, and Viad filed its Reply on October 22, 2013.  Doc. No. 739.  Also on October 22, 2013, Viad filed various objections to Plaintiffs' evidence.  Doc. Nos. 741-746.  On October 29, 2013, Plaintiffs filed a Motion to Strike Viad's objections.  Doc. No. 753.  On November 12, 2013, the court held a hearing regarding causation, at which time the court stated that it would defer ruling on Viad's causation arguments until it also addressed successor liability.  On November 26, 2013, the court issued its Order addressing the other Defendants' Motions for Summary Judgment on Causation.  Doc. No. 783.

On November 25, 2013, Plaintiffs filed an Opposition to Maxim's Motion for Summary Judgment, Doc. No.  765, and an Opposition to Viad's Motion as to the issue of successor liability.  Doc. No. 769.  Maxim and Viad filed Replies on December 2, 2013, Doc. Nos. 788, 793, with Viad also filing objections to Plaintiffs' evidence.  Doc. Nos.  789-791.  A hearing was held on December 23, 2013.

///

///

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of*

*Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has

carried its burden under Rule 56[(a)] its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts [and] come forward

with specific facts showing that there is a *genuine issue for trial*."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

5

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  ANALYSIS

Plaintiffs argue that Maxim and Viad are liable as successors in interest to companies that manufactured and/or supplied products containing asbestos and to which Plaintiff was allegedly exposed. In their Motions for Summary Judgment, Maxim and Viad both argue that Plaintiffs have not established that Cabasug was exposed to any asbestos-containing products supplied by Maxim's and Viad's alleged predecessor companies and in any event Maxim

and Viad are not the legal successors to these companies.  Because the court has already outlined the legal framework on causation in its November 26, 2013 Order, the court first summarizes this framework and then addresses the parties' arguments.

## A.      Legal Framework on Causation

In its November 26, 2013 Order, the court set forth the legal principles to apply in determining causation in the asbestos context under maritime law.[2]  *See Cabasug*, 2013 WL 6212151, at *4-13; *see also Cabasug v. Crane Co.*, --- F. Supp. 2d ----, 2013 WL 3855548 (D. Haw. July 25, 2013), Doc. No. 657 (determining that maritime law applies to this dispute).  In sum:

First, pursuant to *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488 (6th Cir. 2005), and *Conner v. Alfa Laval*, 842 F. Supp. 2d 791 (E.D. Pa. 2012), a plaintiff must show, "for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered."  *Lindstrom*, 424 F.3d at 492 (citations omitted)).  To establish that a product was a substantial factor in causing the injury, "a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.  Rather, where a plaintiff relies on proof of exposure to establish that a

---

[2]  This recitation is provided as a summary only, and the court's full analysis is found in its November 26, 2013 Order.

product was a substantial factor in causing injury, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Id.* (citations omitted).  This inquiry requires a fact-based analysis, with the court's analysis guided by the particular facts to determine whether Plaintiffs have presented evidence supporting a reasonable inference that the asbestos from a particular Defendant's product was a substantial factor in the injury.

Second, a manufacturer is not liable for replacement parts that it did not place into the stream of commerce, whether the manufacturer's product originally contained asbestos components or was designed to include asbestos components.  Thus, a manufacturer is not liable for replacement parts provided by third parties (often provided years later), and owes no duty to warn of the hazards inherent in asbestos-containing replacement parts that the manufacturer did not manufacture or distribute.

**B.    Maxim's Motion for Summary Judgment, Doc. No. 688**

Plaintiffs assert claims against Maxim as the successor in interest to Emhart, which manufactured distilling plants found on several of the vessels on which Cabasug worked.  Maxim argues that any of Emhart's liabilities did not pass

to Maxim when it purchased Emhart's assets in 2008,[3] and in any event there is no

evidence that Cabasug was actually exposed to any asbestos manufactured and/or

supplied by Emhart.  Applying the principles outlined in the November 26, 2013

Order, the court agrees that Plaintiffs have failed to raise a genuine issue that

Cabasug was exposed to any asbestos manufactured or supplied by Emhart.

      As an initial matter, Plaintiffs have established a genuine issue of

material fact that Cabasug worked on Emhart distillers -- Cabasug stated in his

amended interrogatory responses that he "remember[s] working on Maxim

distillers on the older submarines," Doc. No. 689-5, Maxim Ex. C at 11, and during

his deposition he explained that the "older submarines" were the "S-curls," or

Skate class, of which the Seadragon, Sargo, and Swordfish were a part.  Doc. No.

689-6, Maxim Ex. D at 348-49, 376; *see also* Doc. No. 767-10, Pls.' Ex. C, Ott

Decl. Ex. C at 18 (asserting that Maxim provided distilling plants for Skate-,

Skipjack-, and Sturgeon-class submarines); Doc. No. 689-2, Maxim Ex. 1, Brian

Herbert Decl. ¶ 8 (stating that he reviewed documents to identify Emhart

evaporators on the Seadragon, Sargo, and Swordfish).

      The evidence does not establish, however, that Emhart included any

---

[3]  Although Maxim asserts that it purchased the assets of Maxim Evaporators, Inc. in 2008, *see* Doc. No. 689, Maxim CSF ¶¶ 1-4, 9, it does not explain Maxim Evaporators, Inc.'s previous merger with Emhart.  Regardless, for purposes of this Motion only, the court assumes that Maxim is Emhart's successor in interest.

asbestos-containing components in its distillers.  Brian Herbert, President of

Maxim, asserts that his review of Emhart documents reveals that Emhart did not

manufacture, supply, or attach insulation to the evaporators (another term for

distillers).[4]  Doc. No. 689-2, Maxim Ex. 1, Brian Herbert Decl. ¶ 11.  He further

asserts that "[t]o the extent any asbestos containing gaskets were shipped with the

Evaporators, to the best of my information and belief, Emhart did not manufacture

these gaskets."  *Id.* ¶ 13.

       And in opposition, Plaintiffs fail to present any evidence raising a

genuine issue that Emhart included asbestos components in its distillers (and did

not present any argument at the December 23, 2013 hearing either).  Rather, the

only evidence Plaintiffs present is that of their expert, Andrew Ott, who opines in

summary fashion that distilling plants included "access panels and doors" that were

"typically sealed using asbestos gaskets," as well as valves, pumps, air ejectors, air

ejector condensers, and heat exchangers that included asbestos insulation, gaskets,

and packing.  Doc. No. 767-10, Pls.' Ex. C, Ott Decl. at 19-20.  Ott offers no

specific opinion that *Emhart* included asbestos components in its distillers, and

otherwise fails to offer any factual support for such conclusion (*i.e.*, technical

---

[4] Herbert used the term "evaporator" to describe an "Emhart 4,000 GPD Distilling Unit." Doc. No. 689-2, Maxim Ex. 1, Herbert Decl. ¶ 11.

manuals or other documents establishing that Emhart included components containing asbestos).  Ott's conclusory assertions, on their own, are insufficient to raise a fact question that Emhart included asbestos components in its distillers.  *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007) (explaining that even an expert opinion requires a factual basis for any opinion offered in an affidavit); *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004) ("Expert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable."); *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 831 (9th Cir. 2001) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts." (citation omitted)).

Finally, even if Emhart initially included asbestos components in its distillers, *see* Doc. No. 689-2, Maxim Ex. 1, Brian Herbert Decl. ¶ 11, Plaintiffs have failed to raise a genuine issue that by the time Cabasug worked on them, they contained the asbestos components initially supplied by Emhart.  As explained in the November 26, 2013 Order, the asbestos gaskets, packing, and insulation of distillers were regularly replaced during vessel overhauls such that Plaintiffs must establish that Emhart supplied the replacement components to which Cabasug was exposed.  Plaintiffs have failed to do so.

11

Rather, Plaintiffs rely on generalized evidence which does not support the reasonable inference that Emhart supplied asbestos-containing replacement parts.  For example, Ott asserts that "manufacturers of the machinery upon which Mr. Cabasug worked, routinely and typically supplied repair parts -- including asbestos-containing materials -- for use by the Navy in repair and overhaul work of such machinery, and that Mr. Cabasug was exposed to these asbestos-containing materials."  Doc. No. 767-11, Pls.' Ex. C, Ott Decl. at 40.  In support of this assertion, Ott opines that (1) manufacturers typically included the initial complement of gaskets and packing as well as on-board repair parts; (2) manufacturers typically solicited the sale of all parts listed in their technical manuals and gave instructions for ordering replacement parts; and (3) the Navy had a policy and practice to order replacement parts from the original equipment manufacturer ("OEM").  *Id.* at 40-42.[5]  Cabasug similarly asserts that it was the preferred practice to order replacement parts from the OEM, Doc. No. 767-13, Pls.' Ex. D at 270, and his co-worker/supervisor Richard Felimer asserts that he

---

[5]  In their Concise Statement of Facts, Plaintiffs assert that "Old Maxim routinely and typically supplied repair parts, including asbestos-containing materials, for use by the Navy in repair and overhaul work of its machinery.  New Maxim does not dispute this."  Doc. No. 767, Pls.' Concise Statement ¶ 6.  The only evidence Plaintiffs cite for this proposition is the Ott Declaration, which does not support the assertion that Maxim supplied asbestos-containing materials.  Further, Maxim's Motion makes clear that it disputes that it provided asbestos-containing replacement parts.

remembers Maxim as supplying replacement parts.  Doc. No. 767-13, Pls.' Ex. E at 17; *see also* Doc. No. 767-14, Pls.' Ex. F at 89-90 (explaining that the OEM distilling company would sell gaskets to PHNS).  Finally, Plaintiffs point to Brian Herbert's deposition testimony, in which he asserts that Maxim still sells replacement parts for distilling plants.  Doc. No. 767-7, Pls.' Ex. A at 46-47.

These general, conclusory statements regarding replacement parts fail to raise a fact question that Emhart actually offered or supplied *asbestos-containing* gaskets for equipment on which Cabasug worked.  Indeed, Plaintiffs offer no specific evidence that Emhart supplied to PHNS asbestos-containing replacement parts for its distillers.  For example, Plaintiffs offer no Emhart technical manuals providing information on how to order repair parts and showing that Emhart distillers included asbestos gaskets.  Nor do Plaintiffs offer any invoices indicating that Emhart ever sold any original or replacement asbestos components for its distillers.  And Felimer's and Herbert's testimony establishes only that Emhart and/or Maxim offered some replacement parts, not that they offered replacement parts containing asbestos.  Without any specific evidence that Emhart in fact offered replacement parts containing asbestos for distillers on which Cabasug worked, Plaintiffs' generalized assertions regarding what OEMs "typically" do and the Navy's "preferred" practices fail to support the reasonable

inference that Cabasug was exposed to any asbestos-containing components

supplied by Emhart.  Simply put, the court cannot speculate that because

Emhart/Maxim supplied replacement parts, they necessarily supplied *asbestos-*

*containing* replacement parts.

In sum, the court finds that when construing the evidence in the light

most favorable to Plaintiffs, no reasonable jury could conclude that Cabasug was

exposed to asbestos from original or replacement gaskets or packing manufactured

or supplied by Emhart, as any such finding would be impermissibly conjectural.  In

particular, the evidence presented fails to raise a genuine issue of material fact that

(1) Cabasug was exposed to any Emhart products that contained asbestos; or

(2) even if the Emhart products Cabasug worked on originally contained asbestos,

Cabasug was exposed to any asbestos-containing replacement parts provided by

Emhart.  The court therefore GRANTS Maxim's Motion for Summary Judgment,

Doc. No. 688.

## C.    Viad's Motion for Summary Judgment, Doc. No. 694

Plaintiffs assert that Viad is liable as the alleged successor in interest

to (1) GRC, which manufactured distilling plants found on several of the vessels

on which Cabasug worked, and (2) "BLH," which allegedly provided asbestos-

containing replacement parts for the distillers.  There are actually several different

14

BLH entities at issue -- BLH, a Pennsylvania company ("BLH-PA"), BLH, a

Delaware company ("BLH-DE"), and BLH, Inc.  Viad argues, among other things,

that it is not the legal successor in interest to GRC or any BLH entity, and in any

event Plaintiffs have failed to establish that Cabasug was exposed to any asbestos

supplied or manufactured by any of these companies.[6]  To place these summary

judgment arguments into context, the court first outlines the basic relationships

between Viad and these alleged predecessor companies, and then addresses the

parties' arguments.

### 1.    *Viad's Relationships to Alleged Predecessor Companies*

Plaintiffs allege that Viad is the successor to GRC and/or "BLH,"

none of which Viad directly acquired.  Rather, the line from GRC to Viad involves

various mergers and/or acquisitions, and the parties dispute whether in each of

these transactions the predecessor company's liabilities were passed up the line to

Viad.  *See also* Attachment A to this Order.[7]

---

[6] Viad also raises two separate sets of objections to Plaintiffs' evidence.  Doc. Nos. 741-746, 789-791.  In response to the first set of objections, Plaintiffs have filed a Motion to Strike, Doc. No. 753.  The court DEEMS MOOT these objections and the Motion to Strike -- even considering all of Plaintiffs' evidence and arguments, the court finds that Viad is entitled to summary judgment.

[7] To assist in understanding the relationships between the various entities, the court provides as Attachment A to this Order Viad's demonstrative exhibit used in the December 23, 2013 hearing, which diagrams these relationships over time.  Although Attachment A provides some argument as to whether assets passed on to successor corporations (in the form of broken

(continued...)

Specifically, GRC was a subsidiary company of Hamilton-Thomas Corp., and sold several distillers on which Cabasug allegedly worked.  In 1962, BLH-PA purchased 93.4% of Hamilton-Thomas Corp.'s stock, Doc. No. 774-2, Ott Ex. 2, and GRC subsequently dissolved.  Doc. No. 693-20, Viad Ex. K.  Thus, by the end of 1962, GRC no longer existed and the parties dispute whether GRC's liabilities passed to BLH-PA.

In 1965, BLH-PA and Armour and Co. ("Armour") merged, with Armour the surviving corporation.  Doc. No. 775-1, Stanford Lum Ex. A.  Viad concedes that it is the successor to Armour.  As a result of this merger, the parties dispute whether the liabilities of BLH-PA passed to Armour (and thus to Viad).  And to summarize this line of mergers, at issue is (1) whether GRC's liabilities passed to BLH-PA due to BLH-PA's acquisition of Hamilton-Thomas in 1962, and (2) whether BLH-PA's liabilities passed to Armour (and hence to Viad) during their merger in 1965.

Separate from this direct line from GRC to BLH-PA, and then from BLH-PA to Armour, is that as part of the BLH-PA/Armour merger, Armour

---

[7](...continued)
chains from one company to another), the court ultimately need not determine the legal significance of each transaction to determine Viad's Motion for Summary Judgment.  Rather, the court provides Attachment A to show the basic relationships between these companies over time, which Plaintiffs did not dispute.

transferred the assets and liabilities of BLH-PA to a newly-created Armour subsidiary, BLH-DE.  Doc. No. 693-23, Viad Ex. N at ECF 12 of 29.  In other words, Armour had BLH-PA's assets and liabilities branch off from this direct line drawn between BLH-PA, Armour, and Viad -- BLH-DE was a subsidiary of Armour and never merged with Armour or Viad.  Rather, in 1972, BLH-DE changed its name to BLH, Inc., Doc. No. 693-26, Viad Ex. P, and in 1975, BLH, Inc. formally dissolved.  Doc. No. 693-27, Viad Ex. Q.

The creation and existence of BLH-DE is relevant because Plaintiffs assert in their Oppositions to Viad's Motion for Summary Judgment that Cabasug was exposed to asbestos-containing replacement parts provided by "BLH."  Given that Cabasug began his employment with PHNS in 1973, such replacement parts would presumably be provided by BLH-DE (created in 1965), which was only a subsidiary of Armour and did not merge with Armour (or Viad for that matter).  Thus, a final issue is whether Viad is liable for any asbestos exposure caused by BLH-DE.  The court now addresses the parties' arguments on these issues.

## 2.    *Plaintiffs' Procedural Argument*

At the December 23, 2013 hearing, Plaintiffs argued that Viad's Motion for Summary Judgment as it pertains to asbestos exposure is limited to whether Cabasug was exposed to asbestos products supplied by GRC, and that the

17

Motion did not raise whether Cabasug was exposed to asbestos products provided by BLH-PA or BLH-DE.  Plaintiffs thus argue that Viad's Reply impermissibly raised for the first time the argument that Viad is not liable for any asbestos-containing replacement parts supplied by BLH-DE where Armour (Viad's predecessor) was merely BLH-DE's parent corporation.

        The court acknowledges that the main focus of Viad's Motion on causation was whether Plaintiffs raised a genuine issue of material fact that Cabasug was exposed to asbestos-containing products provided by GRC.  *See* Doc. No. 694-1, Viad Mot. at 13-19.  But this focus was for good reason -- Plaintiffs' TAC asserts liability against Viad as the corporate successor to GRC, and does not assert exposure to any asbestos-containing products provided by any BLH entity. *See* Doc. No. 661, TAC ¶¶ 2, 4.  Rather, Plaintiffs argued for the first time in their Opposition to Viad's Motion for Summary Judgment that Viad is liable based on Cabasug's exposure to asbestos-containing replacement parts provided by "BLH" (in their briefing, Plaintiffs never distinguished between BLH-PA and BLH-DE even though Viad's Motion outlined the relationships between these parties). Plaintiffs' argument is late in coming where Plaintiffs filed a Second Amended Complaint on January 25, 2013, Doc. No. 228, and their TAC on August 6, 2013. Doc. No. 661.  And this procedural history certainly undermines Plaintiffs'

assertions regarding their lack of notice of *Viad's* argument where Plaintiffs themselves have yet to properly articulate their claims against Viad.

Setting aside whether Plaintiffs can even assert such new claims at this juncture,[8] the court finds that Viad's Motion sufficiently raised the argument that Viad is not liable for any asbestos exposure attributable to BLH-DE (or its successor, BLH, Inc.).  Viad's Motion outlined in depth the corporation relationships between GRC, BLH-PA, BLH-DE, Armour, and Viad, Doc. No. 694-1, Viad Mot. at 4-7, and Viad's Concise Statement detailed the relevant facts regarding each merger.  *See* Doc. No. 693, Viad Concise Statement ¶¶ 14-28. After outlining each of these corporate mergers, Viad argued in its Motion that GRC could not have provided replacement parts to which Cabasug was exposed where GRC dissolved in 1963, and explained that BLH-PA existed only until 1965 when it merged with Armour.  Doc. No. 694-1, Viad Mot. at 18.  As to BLH-DE in particular, Viad explained that all of BLH-PA's assets and liabilities were transferred to BLH-DE, which was only a subsidiary of Armour.  *Id.* at 22.  As a

---

[8] In its Reply, Viad argues that Plaintiffs should not be permitted to assert new claims against Viad based on any alleged asbestos exposure attributable to BLH-PA or BLH-DE, and that Plaintiffs' claims should be limited as asserted in the TAC to exposure attributable to GRC. Doc. No. 788, Viad Reply at 3-4.  Given the court's analysis below, the court need not address this argument.  For this same reason, the court DENIES Plaintiffs' Ex Parte Motion to Supplement the Record on Viad Corp's Motion for Summary Judgment, Doc. No. 804, which sought to provide evidence regarding Viad's knowledge of the scope of Plaintiffs' claims.

result, Viad argued that it did not succeed to any liabilities where "all of the BLH-PA assets and liabilities were transferred to BLH-DE in a tax-free reorganization in 1965, and BLH-DE was later dissolved," *id.* at 27, and "the assets and liabilities [of BLH-PA] went to BLH-DE, an entity that is *not* a corporate predecessor to Viad." *Id.* at 29.  In other words, Viad raised the specific argument that BLH-DE "is *not* a corporate predecessor to Viad," meaning that Viad is not liable for any liabilities of BLH-DE or BLH, Inc.  Plaintiffs were therefore on notice that to the extent they asserted liability against Viad based on BLH-DE, they were required to present evidence and argument providing a basis for such liability.

        That Plaintiffs were on notice that Viad argued it cannot be liable for any replacement parts sold by BLH-DE is also evident in their Opposition. Specifically, in their Opposition, Plaintiffs apparently recognized the issue caused by the fact that BLH-DE was only a subsidiary of Armour -- Plaintiffs (1) presented lengthy argument that "BLH" (again, Plaintiffs failed to distinguish between BLH-DE and BLH-PA despite their knowledge of these two different entities) sold replacement parts to which Cabasug was exposed, *see* Doc. No. 769, Pls.' Opp'n at 8- 17, and (2) additionally argued that although Armour transferred BLH-PA's assets "into its newly created and wholly-owned subsidiary [BLH-DE]," BLH-DE transferred assets back to Armour, apparently suggesting that Viad

could be held liable for BLH-DE's sales. *See id.* at 25-27. Thus, Plaintiffs knew

that BLH-DE was only a subsidiary of Armour and that they needed to provide a

basis for holding Viad liable for any asbestos exposure attributable to BLH-DE.

The court therefore rejects Plaintiffs' argument that Viad failed to adequately raise

the argument that it is not liable for any exposure attributable to BLH-DE. *See*

*Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. 1984) ("This is not a case

where summary judgment was granted on an issue as to which the losing party had

no opportunity to present argument." (citing *Fountain v. Filson*, 336 U.S. 681

(1949)).

### 3. *The Parties' Substantive Arguments*

Turning to the merits of Viad's Motion, at issue for each of Viad's

alleged predecessor companies is whether (1) Viad is that company's successor,

and (2) Cabasug has raised a genuine issue of material fact that he was exposed to

asbestos from that company.

As to GRC, the court need not address whether Viad is its legal

successor because Plaintiffs have failed to establish a genuine issue of material fact

that Cabasug was exposed to asbestos products manufactured and/or supplied by

GRC. Specifically, there is no dispute that the GRC distillers found aboard vessels

on which Cabasug allegedly worked had been overhauled and their asbestos

components replaced multiple times before Cabasug began working at PHNS in 1973.  *See, e.g.*, Doc. No. 693-4, Viad Ex. C, Charles Cushing Decl. ¶¶ 11-12.  As a result, there is no evidence -- and Plaintiffs do not argue -- that Cabasug was exposed to any original asbestos-containing components provided by GRC.  There is also no evidence -- and Plaintiffs do not argue -- that Cabasug was exposed to any asbestos-containing replacement parts supplied by GRC, where GRC dissolved in 1962 and Cabasug began his employment eleven years later in 1973.[9]

As to BLH-PA, Plaintiffs have failed to establish that Cabasug was exposed to any replacement parts provided by BLH-PA for similar reasons as GRC.  BLH-PA could have supplied replacement parts at most only from 1962 until 1965 when it merged with Armour and BLH-PA's assets and liabilities were transferred to BLH-DE.  And there is no evidence suggesting that BLH-PA sold replacement parts containing asbestos to PHNS during this three-year window between 1962 until 1965, and that those parts were then used over eight years later by Cabasug when he began his employment.  Rather, Ott opines, without

---

[9] Although Richard Felimer, Cabasug's co-worker and supervisor, asserts that it was PHNS' general practice to obtain OEM replacement gaskets "well in advance of any overhauls," and he recalled seeing overhaul kits for distillers labeled "Griscom Russell" that were available for use "into the mid 1970s," Doc. No. 776, Felimer Decl. ¶¶ 15-16, Plaintiffs' expert Andrew Ott explains that such kits would have been supplied by "BLH" (not GRC) using the GRC name. *See* Doc. No. 744, Ott Decl. ¶ 21.  Ott fails, however, to distinguish between BLH-PA and BLH-DE.

22

distinguishing between BLH-PA and BLH-DE, that "BLH routinely sold

replacement parts for [GRC] distilling plans to the US Navy through the 1960s and

mid 1970s."  Doc. No. 774, Ott Decl. ¶ 15(m).[10]  Given that Cabasug began his

employment in 1973, Ott's opinions at most suggest that Cabasug may have come

into contact with replacement parts made by BLH-DE and/or BLH, Inc., not BLH-

PA.  As a result, there is no genuine issue of material fact supporting that Cabasug

was exposed to asbestos from BLH-PA.

Finally, assuming that Cabasug was in fact exposed to replacement

parts provided by BLH-DE and/or BLH, Inc. (an issue the court need not decide),

Plaintiffs have failed to explain in any reasoned manner how any liabilities of

BLH-DE and/or BLH, Inc. are attributable to Viad where BLH-DE and/or BLH,

Inc. were only subsidiaries of Armour and where Viad was Armour's corporate

successor.  Specifically, it is a basic "principle of corporate law deeply ingrained in

our economic and legal systems that a parent corporation (so-called because of

control through ownership of another corporation's stock) is not liable for the acts

of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal

quotations and citation omitted ).  Further, "[c]orporate separateness is respected

---

[10]  Likewise, in paragraph 22 of his Declaration, Ott opines that when Cabasug was overhauling GRC distilling plants through the mid 1970s, "he was removing asbestos gaskets and asbestos packing that had been sold by BLH . . . ."  Doc. No. 774, Ott Decl. ¶ 22.  He again utterly fails to distinguish between BLH-PA and BLH-DE.

unless doing so would work injustice upon an innocent third party." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (quoting *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)).

The test for piercing the corporate veil under admiralty law is well established -- a court sitting in admiralty "may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant" where the "controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." *Id.* (quoting *Kilkenny*, 800 F.2d at 859).  The corporate veil may be pierced "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Id.* (citing *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)).  "To determine whether an individual so dominated and disregarded a corporate entity's corporate form, a court may consider several factors, including: '(1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements for the corporation.'" *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989)).

24

Applying these principles, once Viad argued that it was not the corporate successor to BLH-DE, it was Plaintiffs' burden to rebut this argument and provide some basis for Viad's liability based on BLH-DE.  Plaintiffs failed to carry their burden -- although they acknowledged in their Opposition that BLH-DE was only a subsidiary of Armour and presented facts that BLH-DE transferred some assets to Armour, *see* Doc. No. 769, Pls.' Opp'n at 25-27, Plaintiffs failed to present any reasoned argument explaining how the transfer of some assets supports the finding that Armour was BLH-DE's alter ego.  Plaintiffs' evidence that some assets were transferred does not address the relevant factors outlined above, and Plaintiffs did not even specifically articulate that the asset transfers support piercing the corporate veil.  The court will not forage through the record, speculate as to what arguments the evidence *might* support, or make Plaintiffs' arguments for them.  The court therefore finds that Plaintiffs have failed to raise a genuine issue of material fact that Viad, a successor in interest to Armour, is liable for any asbestos exposure attributable to BHL-DE, which is only a subsidiary to Armour.

In sum, the court finds that when construing the evidence in the light most favorable to Plaintiffs, no reasonable jury could conclude that Viad is a successor in interest to any company that provided asbestos components to which Cabasug was exposed.  In particular, the evidence presented fails to raise a genuine

25

issue of material fact that (1) Cabasug was exposed to any GRC or BLH-PA

products that contained asbestos; or (2) Viad is liable for any asbestos exposure

attributable to BLH-DE, where BLH-DE was only a subsidiary of Armour.  The

court therefore GRANTS Viad's Motion for Summary Judgment, Doc. No. 694.

## V. <u>CONCLUSION</u>

Based on the above, the court GRANTS Maxim's Motion for

Summary Judgment, Doc. No. 688, and GRANTS Viad's Motion for Summary

Judgment, Doc. No. 694.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 27, 2013.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cabasug et al. v. Crane Co. et al.*, Civ. No. 12-00313 JMS/BMK, Order (1) Granting Maxim Evaporators, LLC's Motion for Summary Judgment on Plaintiffs' Third Amended Complaint Filed August 6, 2013, Doc. No. 688; and (2) Granting Defendant Viad Corp's Motion for Summary Judgment, Doc. No. 694; Attachment A