IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT A. CABASUG and JOYCE C. CABASUG, <br><br>         Plaintiffs, <br><br> vs. <br><br> CRANE COMPANY, et al., <br><br>         Defendants. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 12-00313 JMS/BMK <br><br> ORDER (A) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT STRIKING THE AFFIRMATIVE DEFENSES OF (1) LEARNED INTERMEDIARY DOCTRINE; AND (2) THE SOPHISTICATED USER DEFENSE, DOC. NO. 670; AND (B) DENYING DEFENDANT AURORA PUMP COMPANY'S MOTION FOR SUMMARY JUDGMENT RE: SOPHISTICATED PURCHASER DOCTRINE, DOC. NO. 680 |

## ORDER (A) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT STRIKING THE AFFIRMATIVE DEFENSES OF (1) LEARNED INTERMEDIARY DOCTRINE; AND (2) THE SOPHISTICATED USER DEFENSE, DOC. NO. 670; AND (B) DENYING DEFENDANT AURORA PUMP COMPANY'S MOTION FOR SUMMARY JUDGMENT RE: SOPHISTICATED PURCHASER DOCTRINE, DOC. NO. 680

## I.  INTRODUCTION

On June 1, 2012, Plaintiffs Robert and Joyce Cabasug ("Plaintiffs") filed this action asserting claims for negligence, strict liability, breach of warranty, loss of consortium, and punitive damages based on a failure to warn theory against twenty-five Defendants that allegedly manufactured, sold, and/or supplied various

products containing asbestos to the United States Navy.  As alleged in the Third

Amended Complaint ("TAC"), Robert Cabasug ("Cabasug") was exposed to

asbestos contained in Defendants' products while working as a pipefitter and

nuclear engineer at the Pearl Harbor Naval Shipyard ("PHNS") from 1973 through

2006, causing him to develop mesothelioma and other asbestos-related diseases.

This court has already determined that maritime law applies to this

dispute, *see Cabasug v. Crane Co.*, --- F. Supp. 2d ----, 2013 WL 3855548 (D.

Haw. July 25, 2013), Doc. No. 657.  In their latest set of Motions, Plaintiffs and

Defendant Aurora Pump Company ("Aurora") raise the issue of whether a

defendant may assert the affirmative defenses of the sophisticated purchaser and/or

the sophisticated user under maritime law.  These defenses, if recognized in

maritime law, would allow Defendants to argue that they are not liable because the

Navy and/or Cabasug was aware of the dangers of asbestos.  Based on the

following, the court finds that only the sophisticated user defense is cognizable

under the facts presented and therefore GRANTS in part and DENIES in part

Plaintiffs' Motion for Summary Judgment, and DENIES Aurora's Motion for

Summary Judgment.

///

///

## II.  **BACKGROUND**[1]

On June 1, 2012, Plaintiffs filed this action alleging claims for

negligence, strict liability, breach of warranty, loss of consortium, and punitive

damages against Defendants based on their design, manufacture, sale, and/or

supply of various products containing asbestos to the United States Navy.  The

TAC asserts that:

> Defendants and each of them, negligently designed,
> manufactured, selected materials, assembled, inspected,
> tested, maintained for sale, marketed, distributed, leased,
> sold, recommended and delivered the hereinabove
> described certain asbestos products in such manner so as
> to cause said asbestos products to be in a defective and
> unsafe condition, and unfit for use in the way and manner
> such products are customarily treated, used and
> employed; and, that said Defendants, and each of them,
> negligently failed to discover said defects and/or failed to
> warn and/or adequately test and give adequate warning of
> known or knowable dangers of asbestos products to users
> of said products of said defects and dangers and/or failed
> to find or use a safe substitute insulating material.

Doc. No. 661, TAC ¶ 7.

On August 26, 2013, Plaintiffs filed their Motion for Partial Summary

Judgment Striking Defendants' Learned Intermediary and Sophisticated User

Defenses.  Doc. No. 670.  On August 30, 2013, Defendant Aurora Pump Company

---

[1]  The court has already recited basic facts of this action in previous orders and does not reiterate them here.  In its analysis, the court outlines specific facts relevant to the issues raised.

("Aurora") filed its Motion for Summary Judgment regarding the Sophisticated

Purchaser Doctrine.  Doc. No. 680.  Oppositions were filed on September 11, 2013

and November 25, 2013, Doc. Nos. 700, 762, 763, 766, 770, 772, and Replies were

filed on December 2, 2013.  Doc. Nos. 784-87, 794.  A hearing was held on

December 23, 2013.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of

Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's

Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has

carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

///

///

# IV. <u>ANALYSIS</u>

Plaintiffs' and Aurora's Motions raise the question of whether maritime law recognizes either the sophisticated user and/or sophisticated purchaser defenses to tort liability. These defenses have been recognized under a variety of circumstances, and courts have at times referred to these terms interchangeably and/or inconsistently. *See Mack v. Gen. Elec. Co.*, 896 F. Supp. 2d 333, 339-40 (E.D. Pa. 2012). In fact, even some of the parties in this action appeared to confuse and/or conflate the terms "sophisticated user" and "sophisticated purchaser" in their briefing. Thus, to provide clarity, the court begins with a broad outline for the use of these terms in this specific asbestos-related context:

Under the sophisticated user defense, manufacturers or suppliers of a product (*i.e.*, Defendants) have the burden of demonstrating that the ultimate end-user of the product (*i.e.*, Cabasug), was a "sophisticated" user of the product. Under such circumstances, a Defendant could not have caused the end-user's injuries if the end-user was already aware or reasonably should have been aware of the dangers of asbestos. In comparison, under the sophisticated purchaser defense, manufacturers or suppliers of a product (*i.e.*, Defendants) are absolved for liability caused to an ultimate end-user (*i.e.*, Cabasug) if they establish that they: (1) knew

that an intermediary (*i.e.*, the Navy) was aware of the dangers of asbestos, and

(2) reasonably concluded that the intermediary would provide warnings to its

employees.

      To determine whether Defendants may take benefit from either of

these defenses, the court recognizes that maritime law is "[d]rawn from state and

federal sources," and "is an amalgam of traditional common-law rules,

modifications of those rules, and newly created rules." *East River S.S. Corp. v.

Transamerica Delaval Inc.*, 476 U.S. 858, 864-65 (1986) (citations omitted); *see

also Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 878 (1997).  The

court must look to these sources with an eye to determining the prevailing view

and which fulfills the primary goals of maritime law.  *See Pan-Alaska Fisheries,

Inc. v. Marine Const. & Design Co.*, 565 F.2d 1129, 1134 (9th Cir. 1977); *Mack*,

896 F. Supp. 2d at 338 ("A court deciding an issue under maritime law should look

to -- and has discretion to determine and define -- the 'prevailing view' on land,

with an eye toward advancing the primary goals of maritime law.").  These primary

goals include to (1) protect maritime workers from the perils of working at sea;

(2) promote and protect maritime commercial activity; and (3) promote uniformity

in the law of the sea.  *See Mack*, 896 F. Supp. 2d at 338-39.

      With this framework, the court proceeds to address Plaintiffs' and

Aurora's Motions.

## A.    Plaintiffs' Motion for Summary Judgment[2]

### *1.    Sophisticated User Defense*

Plaintiffs argue that Defendants' sophisticated user defense should be stricken because this defense is not recognized under maritime law and even if the defense were generally recognized, there is no evidence that Cabasug was aware of the dangers of asbestos.

The sophisticated user defense (as well as the sophisticated purchaser defense) evolves from the Restatement (Second) of Torts, § 388 (1965) (the "Restatement"), which provides:

> **Chattel Known To Be Dangerous For Intended Use**
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:

---

[2]  Several Defendants raise the procedural argument that Plaintiffs' Motion is effectively a Rule 12(f) Motion to Strike and is therefore untimely.  Although a Rule 12(f) motion must be made "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading," Fed. R. Civ. P. 12(f)(2), Plaintiffs' Motion is proper under Rule 56(a), which allows a party to move for summary judgment on a "claim or defense."  Fed. R. Civ. P. 56(a).  This language was included in the 2010 amendments "to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."  *Id.* Advisory Committee Notes, 2010 Amendments.

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

As to the sophisticated user defense in particular, Comment "k" to Section 388 provides:

> k.  When warning of defects unnecessary.  One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. . . .

The sophisticated user defense is "no more than an expression of common sense as to why a party should not be liable when no warnings or inadequate warnings are given to one who already knows or could reasonably have been expected to know of the danger."  *Vondra v. Chevron U.S.A., Inc.*, 652 F. Supp. 2d 999, 1006 (D. Neb. 2009) (quoting *Crook v. Kaneb Pipe Line Operating P'ship*, 231 F.3d 1098, 1102 (8th Cir. 2000)); *see also Taylor v. Am. Chem. Council*, 576 F.3d 16, 25 (1st Cir. 2009) (explaining that where certain dangers are "obvious" to a user, a warning is "superfluous").  Following this reasoning,

numerous courts have adopted the sophisticated user defense, including courts addressing maritime law.  *See, e.g.*, *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 464-66 (5th Cir. 1976) (determining under maritime law that the manufacturer could "reasonably anticipate that only professionals familiar with the precautions necessary for safe handling of benzene and similar petrochemical substances would come in contact" with it in light of the limited marketing of the product to industrial users); *Mack*, 896 F. Supp. 2d at 343 (adopting sophisticated user defense under maritime law in asbestos action); *Taylor*, 576 F.3d at 25 (Massachusetts law); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 946 (8th Cir. 1998) (Iowa law); *Davis v. Avondale Indus., Inc.*, 975 F.2d 169, 172 (5th Cir. 1992) (Louisiana law); *Strong v. E. I. DuPont de Nemours Co.*, 667 F.2d 682, 687 (8th Cir. 1981) (Nebraska law); *see also Ionmar Compania Naviera, S. A. v. Olin Corp.*, 666 F.2d 897, 904 (5th Cir. 1982) (adopting § 388 as an expression of maritime law).[3]  And in opposition, Plaintiffs fail to cite to *any* case rejecting the sophisticated user defense as a matter of law.  *See* Doc. No. 670-1, Pls.' Mot. at 34-38.

---

[3]  Although the Ninth Circuit has yet to expressly adopt § 388 of the Restatement as an expression of maritime law, *see McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 453-54 (9th Cir. 1983) (observing that "this court has not yet adopted sections 388 and 389 as a basis for liability in admiralty in this circuit"), it has cited § 388 in discussing maritime law.  *See Pan-Alaska*, 565 F.2d at 1136.

The MDL court in *Mack* outlined this "trend in law across

jurisdictions" allowing the sophisticated user defense, and explained that

recognizing the sophisticated user defense furthers the goals of maritime law:

> To begin, recognition of a sophisticated user defense
> under maritime law would serve to encourage
> participation in maritime commerce by limiting -- in a
> reasoned manner -- potential liability of those entities
> involved in such commerce while continuing to protect
> those sea workers in need of protection (*i.e.*, those
> workers who are not sophisticated as to the hazards to
> which their work exposes them).  Accordingly, adoption
> of the sophisticated user defense would further these
> objectives of maritime law, while increasing uniformity
> in the law.

896 F. Supp. 2d at 342.  *Mack* therefore held that "maritime law recognizes the

sophisticated user defense."  *Id.*

*Mack* limited its holding, however, by determining that this defense

applies only to negligence and not strict liability claims.  Although recognizing that

courts were split on this issue, *Mack* found persuasive *Menna v. Johns-Manville

Corp.*, 585 F. Supp. 1178 (D.N.J. 1984), which explains that "negligence law

focuses on the reasonableness of defendants' conduct, while strict liability focuses

on defendants' product without regard to conduct or fault . . . .  It follows logically

that the duty to warn . . . cannot depend on a particular [user]'s knowledge or level

of sophistication."  *Mack*, 896 F. Supp. 2d at 344 (quoting *Menna*, 585 F. Supp. at

11

1184).  *Mack* also reasoned that § 388 is only within the "Negligence" section and not the "Strict Liability" section of the Restatement, and recognizing the defense for strict liability claims would "run counter to the purpose for which strict liability is imposed for a manufacturer's liability to turn on the product users' characteristics, such as sophistication, which are out of the control of the manufacturer."  *Id.*

The court agrees with *Mack* to the extent it recognizes the sophisticated user defense for negligence claims as consistent with the caselaw and maritime policy considerations.  But the court disagrees with *Mack's* refusal to extend this defense to strict liability claims.  There is simply no principled reason to distinguish this defense in relation to a negligence or strict liability claim.  And there is compelling support for recognizing the sophisticated user defense for strict liability claims under maritime law.

As an initial matter, "[t]he distinction between strict liability and negligence lessens in duty to warn cases; under either theory, the issue is whether a warning was required and, if so, if an adequate warning was provided."  *Kealoha v. E.I. Du Pont de Nemours & Co.*, 844 F. Supp. 590, 594 (D. Haw. 1994).  As a result, even in the strict liability context, the user's knowledge is still relevant -- as the Restatement § 402A, comment i provides, whether a warning is necessary

requires consideration of the knowledge of the ordinary consumer using the product.  *See* Restatement § 402A comment i (explaining that for a strict liability claim, "[t]he Article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics"); *see also Pan-Alaska*, 565 F.2d at 1134 (adopting § 402A as a statement of maritime law).

In light of § 402A comment i, *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir. 1976), recognized the sophisticated user defense for strict liability claims under maritime law.  As *Martinez* explains, even for strict liability claims the adequacy of a warning "cannot be evaluated apart from the knowledge and expertise of those who may reasonably be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain."  529 F.2d at 465-66.  Thus, *Martinez* held that whether a claim is based on strict liability or negligence, a manufacturer cannot be the cause of any injury where the sophisticated user is charged with knowing the particular product's dangers.  *Id.* at 466-67; *see also Vondra*, 652 F. Supp. 2d at 1006 (explaining that the "'sophisticated user' concept also affects the element of proximate cause").  And other courts have followed this reasoning to recognize the sophisticated user defense for both negligence and strict liability claims.  *See, e.g.*, *DJ Coleman, Inc.*

*v. Nufarm Am., Inc.*, 693 F. Supp. 2d 1055, 1077 (D.N.D. 2010) (North Dakota law); *see also Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1464 (D. Nev. 1992) ("[T]he Court will leave the task of distinguishing between negligence and strict liability in the duty to warn to those who count angels on the heads of pins." (quoting *Nigh v. Dow Chem. Co.*, 634 F. Supp. 1513, 1517 (W.D. Wisc. 1986))); *O'Neal v. Celanese Corp.*, 10 F.3d 249, 251 (4th Cir. 1993) (determining that sophisticated purchaser defense should be treated the same for strict liability and negligence duty to warn claims under Maryland law); *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 742 (3d Cir. 1990) (same under Ohio law).

As another example, *Dehring v. Keystone Shipping Co.*, 2013 WL 3879619, at *13 (E.D. Mich. July 26, 2013), another case addressing this defense under maritime law, specifically rejected *Mack* to the extent *Mack* refused to apply the sophisticated user defense to strict liability claims. *Dehring* reasoned:

> The purpose of the duty to warn is to inform the audience of a product's non-obvious risks. What risks are non-obvious depends on the audience -- risks that may not be obvious to a layman may be obvious to the skilled professional. The sophisticated user doctrine is thus not an exception to the duty to warn, but an application of it. A manufacturer is not liable for failing to warn of risks that "should be obvious to, or generally known by, foreseeable product users." Restatement (Third) § 2 cmt. j (emphasis supplied). When the foreseeable users are skilled professionals in an industry instead of unsophisticated novices, the risks that are obvious will be

14

different.

The court agrees with *Martinez* and *Dehring*.  The focus of both negligence and strict liability duty to warn claims is on whether Defendants had a duty to provide a warning and whether the lack of a warning caused Plaintiffs' injuries.  Thus, what Cabasug knew or reasonably should have known regarding the dangers of asbestos applies to either claim -- regardless of whether the claim is one for negligence or strict liability, a Defendant could not have caused Plaintiffs' injuries if Cabasug was already aware or reasonably should have been aware of the dangers of asbestos.  And the court is aware of no maritime policy consideration that would suggest recognizing the sophisticated user defense for a negligence duty to warn claim and not a strict liability duty to warn claim.[4]  The court therefore holds that the sophisticated purchaser defense is cognizable under maritime law as to both negligence and strict liability duty to warn claims.

In opposition, Plaintiffs argue that even if the court recognizes the sophisticated user defense, there is no evidence that Cabasug was a sophisticated end-user with respect to asbestos hazards.  *See* Doc. No. 670-1, Pls.' Mot. at 35.

---

[4] Citing *Mack*, Plaintiffs argue that recognizing the sophisticated user defense under maritime law would run counter to the maritime goal of protecting seaman.  *See* Doc. No. 670-1, Pls.' Mot. at 34 (quoting *Mack*, 896 F. Supp. 2d at 344).  But neither *Mack* nor Plaintiffs offers any reasoned explanation as to how maritime policies support recognition of this defense for a negligence, but not a strict liability, duty to warn claim.

15

The court rejects this argument.  Defendants have presented evidence that: (1) the Navy's "Safety Handbook for Pipefitters," which predates Cabasug's employment, warns that "asbestos dust is injurious if inhaled.  Wear an approved dust respirator for protection against his hazard."  Doc. No. 779-9, Viad Ex. F at 10; (2) Cabasug testified that face masks were available for use when he first started working at PHNS, and that individuals wore them when conditions were dusty, Doc. No. 779-8, Viad Ex. E at 113; (3) Cabasug admitted that he understood that asbestos could be hazardous by at least December 1975, Doc. No. 779-8, Viad Ex. E at 132, *see also* Doc. No. 117, Pls.' Ex. A at 117 (stating that he first understood that asbestos could be hazardous "in the mid to the late 1970s"); (4) Cabasug learned at a PHNS "stand up safety" meeting that valves, flanges, glands, and pipe insulation contained asbestos, and that he should wear protective equipment in working with equipment containing asbestos, Doc. No. 779-8, Viad Ex. E at 126-127; and (5) Cabasug was a member of the plumber and pipefitters' union, which provided publications including warnings regarding asbestos.  *Id.* at 109; Doc. No. 779-11, Viad Ex. H.  Viewed in a light most favorable to Defendants, this evidence raises a genuine issue that Cabasug was aware and/or reasonably should have been aware of the dangers of breathing asbestos fibers.  The court therefore DENIES Plaintiffs' Motion for Summary Judgment seeking to strike the sophisticated user defense.

## 2. *Plaintiffs' Motion on the Sophisticated Purchaser Defense*

Plaintiffs argue that the sophisticated purchaser defense is not available under maritime law where Defendants did not provide any asbestos-related warnings to Cabasug's employer, the Navy, and did not reasonably rely on the Navy to warn its employees.[5]

Like the sophisticated user defense, the sophisticated purchaser defense evolves from § 388 of the Restatement.  But given that this defense turns on the reasonableness of the manufacturer's reliance on a third party (in this case, the Navy) to provide warnings to the plaintiff, the Restatement explains that application of this defense is necessarily fact-dependent:

> Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability.  It is merely a means by which this information is to be conveyed to those who are to use the chattel.  The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it.  All sorts of chattels may be supplied for the use of others, through all sorts of third persons and under an infinite variety of circumstances.  This being true, it is obviously

---

[5]   At the December 23, 2013 hearing, Defendants argued that Plaintiffs made only the *legal* argument that the sophisticated purchaser defense is not recognized under maritime law, and did not make the *factual* argument that Defendants have failed to raise a genuine issue of material fact supporting this affirmative defense.  The court disagrees -- Plaintiffs raised the latter by arguing that Defendants have not established a factual basis for this defense.  *See* Doc. No. 670-1, Pls.' Mot. at 29-30.

> impossible to state in advance any set of rules which will automatically determine in all cases whether one supplying a chattel for the use of others through a third person has satisfied his duty to those who are to use the chattel by informing the third person of the dangerous character of the chattel, or of the precautions which must be exercised in using it in order to make its use safe.

Restatement § 388, comment n.  The Restatement therefore outlines several factors to consider in determining whether reliance on an intermediary is reasonable, including:

> (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given, (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that [it] directly warn all users.

*Kealoha v. E.I. du Pont de Nemours & Co.*, 82 F.3d 894, 902 (9th Cir. 1996) (quoting *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 739-40 (3d Cir. 1990)); *see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig*., 97 F.3d 1050 (8th Cir. 1996); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).  *See generally* Restatement § 388 cmt. n.

Most jurisdictions have recognized some form of the sophisticated purchaser defense, with the success of this defense dependent on the particular facts presented.  *See, e.g.*, *Ellis v. C.R. Bard, Inc*., 311 F.3d 1272, 1280 (11th Cir.

2002) (explaining under Georgia law that "[i]t is well settled that the 'learned intermediary' rule . . . is applicable to medical devices implanted in patients under the supervision of a physician" (quotations and citations omitted)); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1037 (10th Cir. 1998) (affirming summary judgment under Oklahoma law in favor of chemical manufacturer where the Air Force's "wealth of research available, the ability of the Air Force to conduct studies, and its extremely knowledgeable staff" made it a "knowledgeable purchaser" aware of dangers of low level chemical exposures); *Kealoha*, 82 F.3d at 902 (affirming under Hawaii law that bulk supplier of PTFE provided to knowledgeable intermediary for the manufacture of implants was entitled to summary judgment on claims brought by implant recipient); *Sowell v. Am. Cyanamid Co.*, 888 F.2d 802, 804 (11th Cir. 1989) (holding jury question existed whether defendant tank manufacturer's provision of a manual explaining the dangers of the product to the Navy discharged defendant's duty to warn the Navy's employees).

But several courts have also voiced concern in extending the sophisticated purchaser defense beyond its usual "bulk supplier" and manufacturer/doctor/patient contexts to the manufacturer/employer/employee context. *See Adams v. United States*, 449 F. Appx. 653, 659 (9th Cir. 2011) (holding that district court did not abuse its discretion in refusing to extend

sophisticated purchaser doctrine beyond the bulk supplier and manufacturer/

doctor/patient contexts under Idaho law); *Vondra*, 652 F. Supp. 2d at 1006

(refusing to extend sophisticated purchaser defense "in all industrial

employer/employee situations"); *Mann v. Lincoln Elec. Co.*, 2010 WL 4117417, at

*6-7 (N.D. Ohio Oct. 15, 2010) (discussing caselaw from various jurisdictions to

conclude that South Dakota would not accept this defense in the manufacturer/

employer/employee context); s*ee also Pan-Alaska*, 565 F.2d at 1136-37

(determining under maritime law that defense did not apply to engine manufacturer

where the manufacturer provided a single warning letter to the dealer/intermediary

because the manufacturer "cannot delegate its duty to have its [products] delivered

to the ultimate purchaser free from dangerous defects").[6]

   Given the fact-specific nature under which courts have addressed this

defense, the court finds most helpful those cases addressing where a defendant

manufacturer provides an asbestos-containing product to a third party whose

employees are subsequently exposed to the asbestos.

---

  [6] Plaintiffs argue that *Pan-Alaska* stands for the proposition that the sophisticated purchaser defense does not apply as a matter of law to strict liability claims under maritime law. The court does not read *Pan-Alaska* so broadly. For example, *Pan-Alaska* states that "we hold *under these facts* that Caterpillar cannot escape liability under the sophisticated purchaser defense." 565 F.2d at 1136 (emphasis added). Caterpillar had provided a single warning letter to the immediate purchaser and dealer of an engine, and there was no evidence that Caterpillar had a basis to rely on this purchaser and dealer to provide the warning to the ultimate end-user. *Id.*

The court begins with *Mack*, an MDL case which held that the

sophisticated purchaser defense should not be recognized under maritime law in an

asbestos context where the Navy is the employer.  *Mack* explained that

consideration of the factors outlined in the Restatement supports rejecting the

sophisticated purchaser defense in this context:

> In situations involving asbestos hazards aboard vessels,
> the risks involved are often serious and even fatal.
> Moreover, the risks of asbestos were faced by very large
> numbers of maritime workers aboard both commercial
> vessels and Navy ships.  As such, the magnitude of the
> risk of asbestos injury was quite large, while the burden
> of providing warnings to end users (such as the cost of
> including warning labels on products), generally
> speaking, would have been comparatively small.

896 F. Supp. 2d at 343.  *Mack* further reasoned that allowing this defense runs

counter to the goals of maritime law because it would (1) "discourage work at sea

and, in turn, impair rather than promote maritime commerce," *id.* at 342; and

(2) leave Navy seamen and their survivors with no remedy given that "the

sophisticated purchaser defense places the burden of warning (and accompanying

liability for failing to warn) on the purchaser of the asbestos, which, in the case of

Navy seaman, was the United States Navy."[7]  *Id.*  Thus, "recognition of a

---

[7] *Mack* notes that the *Feres* doctrine, which prevents Navy seamen and their survivors from asserting claims against the United States for their asbestos-related injuries, does not apply to all maritime workers employed by the federal government and did not apply to the Plaintiff.

(continued...)

sophisticated purchaser defense under maritime law would have the effect of thwarting the primary aim of maritime law of protecting and providing remedies for those who work at sea." *Id. Mack* therefore concluded "that the 'sophisticated purchaser' defense is not available under maritime law in cases involving asbestos." *Id.* at 343.

While *Mack* found that the sophisticated purchaser defense is *never* available under maritime law in asbestos cases, cases decided under state law have addressed the sophisticated purchaser defense in the asbestos shipyard context as a factual matter. For example, in *Oman v. Johns-Manville Corp.*, 764 F.2d 224 (4th Cir. 1985) (en banc), shipyard employees asserted that various asbestos manufacturers breached their duty to warn regarding the dangers of asbestos. Applying Virginia law, *Oman* rejected defendants' argument that the trial court erred in failing to instruct the jury on the sophisticated purchaser defense. *Id.* at 233. *Oman* explained that consideration of the factors discussed in comment n of § 388 supported rejection of this defense under these facts:

> In this case the product, because it contained asbestos
> fibers, was very dangerous. The burden on the

---

[7](...continued)
*Mack* nonetheless reasoned that "at this stage of the asbestos litigation, the vast majority of asbestos claims brought by employees of the federal government are brought by Navy seamen (or their survivors) for injuries incurred during their service in the Navy." 896 F. Supp. 2d at 342 n.8.

> manufacturers in placing a warning on the product was not great.  The employer was unaware of the danger until 1964.  Finally, once the employer became aware of the potential danger it failed to convey its knowledge to its employees.  We cannot say that the district court erred in refusing to give the charge requested by the manufacturers *under the set of facts* involved in this case.

*Id.* (emphasis added).

*Willis v. Raymark Indus., Inc.*, 905 F.2d 793, 797 (4th Cir. 1990), echoed and extended *Oman*, determining that an employer's mere knowledge of the dangers of asbestos is insufficient to trigger this defense under Virginia law.

*Willis* explains:

> Celotex's proffer of proof on this issue, however, does not address one critical point:  whether Celotex knew the extent of duPont's knowledge during or prior to the period of the plaintiffs' exposure.  Celotex may not escape liability by reconstructing the past to show merely what the employer/purchaser knew.  Comment n clearly focuses on what the product manufacturer knew and the reasonableness of its reliance on the employer *prior to and during the time the workers were exposed*.  Moreover, Celotex offers no evidence that it apprised duPont of the dangers of the insulation or that it attempted to ascertain whether duPont could reasonably be relied upon to disseminate information about the dangers of the product.  The fact that an employer possesses knowledge of a product's dangers does not extinguish the manufacturer's liability unless the manufacturer can also show that it had reason to believe that the employer was or would be acting to protect the employees.

*Id.* at 797.  Thus, *Willis* affirmed the trial court's refusal to provide a sophisticated purchaser defense to the jury.

In line with *Oman* and *Willis*, other asbestos cases have determined that a defendant manufacturer's passive reliance on the employer to provide warnings is insufficient to trigger the sophisticated purchaser defense.  *See In re Brooklyn Navy Yard Asbestos Litig*., 971 F.2d 831, 837-38 (2d Cir. 1992) (rejecting that sophisticated purchaser defense called into question plaintiffs' jury verdict for plaintiff under New York law where "the record supports neither a finding that defendants actually relied on the Navy to warn its workers, nor a finding that any such reliance would have been justifiable"); *Adkins v. GAF Corp*., 923 F.2d 1225, 1231 (6th Cir. 1991) (rejecting sophisticated user defense where there was no evidence that manufacturer supplied warnings to Celotex and was otherwise familiar with the operation of the Celotex facility such that it was aware that Celotex employees were not being protected); *Eagle-Picher Indus. v. Balbos*, 604 A.2d 445, 465 (Md. 1992) (affirming trial court's decision not to instruct the jury regarding the sophisticated purchaser defense where although manufacturers presented "that Bethlehem knew of the danger of asbestos," they failed to proffer

evidence that they "knew that Bethlehem knew of the danger").[8]

The court generally agrees with this caselaw and distills the following principles:  Defendants cannot take benefit of the sophisticated purchaser defense unless they can establish that they knew that the Navy was aware of the dangers of asbestos and that Defendants reasonably concluded that the Navy would provide warnings to its employees.  Thus, in the asbestos context there must be some basis for the manufacturer/supplier to reasonably believe that the ultimate user knows of the item's hazards.

And that the intermediary/employer is sophisticated is not, on its own, sufficient for this defense.  Rather, there must be some reason, beyond the

---

[8]  The only asbestos case cited by Defendants for an opposite rule is *Donlon v. AC & S, Inc.*, 2013 WL 1880810, at *1 n.1 (E.D. Pa. Mar. 26, 2013), in which the MDL court, applying California law, granted summary judgment in favor of defendants based on sophisticated user defense due to Navy's knowledge of dangers of asbestos.  *Donlon* based this determination on the non-asbestos case of *Johnson v. American Standard, Inc.*, 179 P.3d 905 (Cal. 2008), which recognized the sophisticated purchaser defense and cited with approval *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1151 (N.D. Cal. 1982).  In turn, *In re Asbestos Cases* denied a motion to strike sophisticated user defense under California law, explaining that this defense could be recognized in the asbestos context provided "that the plaintiffs were permitted to negate the defense by showing that the sophisticated employer's misuse of the product was foreseeable." *Id.*

Contrary to *Donlon's* broad reading of *Johnson* and application of the sophisticated purchaser defense, *Pfeifer v. John Crane, Inc.*, 2013 WL 6192658 (Cal. App. Nov. 27, 2013), provided a more limited view of *Johnson*, explaining that *Johnson* "declined to decide whether a plaintiff's employment or servant relationship with a sophisticated intermediary user necessarily shields defendants from liability."  *Id.* at *13.  *Pfeifer* proceeded to hold that in the asbestos manufacturer context, "the intermediary's sophistication is not, as matter of law, sufficient to avert liability; there must be a sufficient reason for believing that the intermediary's sophistication is likely to operate to protect the user, or that the user is likely to discover the hazards in some other manner."  *Id.*

employer's sophistication, for the defendant's belief that the employer will provide warnings to its employees. That this defense in the asbestos context requires some affirmative step on the part of the manufacturer/supplier makes sense because, as *Mack* explains, exposure to asbestos poses serious and fatal risks to numerous maritime workers, and the burden of providing warnings is small. *See also* Restatement § 388 comment n (explaining that "the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them (*see* § 291), and the magnitude of the risk is determined not only by the chance that some harm may result but also the serious or trivial character of the harm which is likely to result"). Thus, evidence of the Navy's knowledge of the dangers of asbestos, on its own, is insufficient to sustain the sophisticated purchaser defense under maritime law.

The court does not, however, extend its analysis as far as *Mack* in holding that the sophisticated purchaser defense is *never* available as a matter of law. As described above, all of the state law cases rejected the sophisticated purchaser defense based on the facts presented, and the Restatement stresses the fact-intensive nature of this defense. The court therefore leaves open the possibility that there may be facts presented sufficient to trigger this defense.

Applying these principles in this action, although Defendants have

26

presented reams of evidence regarding the Navy's knowledge of the dangers of asbestos, they have presented no evidence that Defendants (1) provided any warnings to the Navy regarding asbestos; (2) determined the Navy's knowledge of the dangers of asbestos; or (3) determined or otherwise reasonably concluded that the Navy would provide warnings to its employees regarding the dangers of asbestos. In other words, there is no evidence that Defendants were aware of the Navy's knowledge of the dangers of asbestos, or had any basis to form the reasonable belief that the Navy would take affirmative steps to warn its employees. Given the complete lack of evidence suggesting that Defendants reasonably relied on the Navy, the court finds that Defendants cannot establish the sophisticated purchaser defense.

The court therefore GRANTS Plaintiffs' Motion for Summary Judgment on Defendants' sophisticated purchaser defense. This determination is limited to Defendants' sophisticated purchaser defense -- the Navy's knowledge regarding the dangers of asbestos may be relevant to other issues and/or defenses that are not before the court.

**B.    Aurora's Motion for Summary Judgment**

Aurora argues that it is entitled to summary judgment based on a variation of the sophisticated user defense -- Aurora argues that the Navy, and not

27

Cabasug, was the end-user of its products, and that Aurora had no duty to warn

where the Navy was aware of the dangers of asbestos.[9]  The court rejects this

argument -- no case addressing either the sophisticated purchaser defense or the

sophisticated user defense in the asbestos context has adopted such analysis.

Further, as explained above in addressing Plaintiffs' Motion on the sophisticated

purchaser defense, cases in the asbestos context have viewed the employer (in this

case, the Navy) as the intermediary, not the end-user, and have therefore applied

the sophisticated purchaser defense, not the sophisticated user defense.  *See Mack*,

896 F. Supp. 2d at 341 (explaining that for the sophisticated user defense, the end-

user is "the plaintiff or person injured by the product -- as opposed to the person or

entity to whom the product was sold or supplied (e.g., an intermediary such as the

Navy or an employer)").  The court therefore DENIES Aurora's Motion for

Summary Judgment.

## V.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part

Plaintiffs' Motion for Partial Summary Judgment, and DENIES Aurora's Motion

---

[9]  Although Aurora confusingly and interchangeably uses the terms "sophisticated purchaser" and "sophisticated user" throughout its opening brief, Doc. No. 680-1, Aurora clearly asserts in its Reply that "it is the plaintiffs' employer (*i.e.*, the Navy) **not the employee** that is the appropriate end-user for the sophisticated user analysis."  Doc. No. 794, Reply at 3.

for Summary Judgment.  Defendants may proceed with their sophisticated user affirmative defense, but not their sophisticated purchaser affirmative defense.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 27, 2013.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cabasug et al. v. Crane Co. et al.*, Civ. No. 12-00313 JMS/BMK, Order (A) Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment Striking the Affirmative Defenses of (1) Learned Intermediary Doctrine; and (2) the Sophisticated User Defense, Doc. No. 670; and (B) Denying Defendant Aurora Pump Company's Motion for Summary Judgment Re: Sophisticated Purchaser Doctrine, Doc. No. 680