IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT A. CABASUG and JOYCE C. CABASUG,<br><br>     Plaintiffs,<br><br>  vs.<br><br>CRANE COMPANY, et al.,<br><br>     Defendants.<br>_____ | CIVIL NO. 12-00313 JMS/BMK<br><br>ORDER (1) DENYING PLAINTIFFS' MOTION TO RECONSIDER OR MODIFY ORDER GRANTING DEFENDANT VIAD CORP'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, TO SET ASIDE, DOC. NO. 812; AND GRANTING DEFENDANT VIAD CORP'S MOTION FOR RECONSIDERATION OF A LIMITED PORTION OF THE COURT'S ORDER GRANTING SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(A), DOC. NO. 809 |

## ORDER (1) DENYING PLAINTIFFS' MOTION TO RECONSIDER OR MODIFY ORDER GRANTING DEFENDANT VIAD CORP'S MOTION FOR  SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, TO SET ASIDE, DOC. NO. 812; AND GRANTING DEFENDANT VIAD CORP'S MOTION FOR RECONSIDERATION OF A LIMITED PORTION OF THE COURT'S ORDER GRANTING SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(A), DOC. NO. 809

## I.  INTRODUCTION

On December 27, 2013, the court granted Defendant Viad Corp.'s

("Viad") Motion for Summary Judgment. *See Cabasug v. Crane Co.*, 2013 WL

6842938 (D. Haw. Dec. 27, 2013).  Plaintiffs Robert and Joyce Cabasug

("Plaintiffs") had named Viad as a Defendant in this shipyard asbestos action as a successor in interest to various companies that allegedly included asbestos components in their products to which Robert Cabasug ("Cabasug") was exposed, including Griscom-Russell Company ("GRC") and "Baldwin-Lima-Hamilton," ("BLH"), which Viad's Motion for Summary Judgment explained includes several BLH entities.  The December 27, 2013 Order determined that Plaintiffs had failed to establish a genuine issue of material fact that Viad is the legal successor to any company that manufactured or supplied asbestos containing products to which Cabasug was exposed.

Currently before the court are Motions for Reconsideration of the December 27, 2013 Order filed by both Plaintiffs and Viad.  Plaintiffs seek reconsideration of the court's determination that Viad is not a successor in interest to BLH-DE or BLH, Inc.  Doc. No. 812.  Viad seeks limited reconsideration of the December 27, 2013 Order to clarify that Viad conceded that it is the legal successor to Armour Corp. ("Armour") for purposes of its Motion for Summary Judgment only.  Doc. No. 809.  On January 24, 2014, Viad filed an Opposition to Plaintiffs' Motion, and on January 28, 2014 Plaintiffs filed a Statement of No Position as to Viad's Motion.  Doc. No. 818.  Based on the following, the court DENIES Plaintiffs' Motion for Reconsideration, and GRANTS Viad's Motion for

Reconsideration.

## II.  <u>STANDARD OF REVIEW</u>

Local Rule 60.1 allows a party to file a motion for reconsideration of an interlocutory order.  Reconsideration is permitted only where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of law or fact."  *See Sierra Club, Hawaii Chapter v. City & Cnty. of Honolulu*, 486 F. Supp. 2d 1185, 1188 (D. Haw. 2003) ("Local Rule 60.1 explicitly mandates that reconsideration only be granted upon discovery of new material facts not previously available, the occurrence of an intervening change in law, or proof of manifest error of law or fact.").

A "motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996); *Na Mamo O 'Aha 'Ino v. Galiher*, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999).  Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.

3

*See Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). Indeed, "[a] motion for reconsideration is not a vehicle for the introduction of arguments that could and should have been made to the district court earlier, nor may a party move for reconsideration on the basis of its own procedural failures." *Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 33 (1st Cir. 2012); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters., Inc.*, 229 F.3d at 883).

## III. ANALYSIS

### A.    Plaintiffs' Motion for Reconsideration

Plaintiffs asserts that Viad is liable as the alleged successor in interest to (1) GRC, which manufactured distilling plants found on several of the vessels on which Cabasug worked, and (2) "BLH," which allegedly provided asbestos-containing replacement parts for the distillers. As explained in the December 27, 2013 Order, there are actually several different BLH entities at issue -- BLH, a

Pennsylvania company ("BLH-PA"), BLH, a Delaware company ("BLH-DE"), and BLH, Inc.  *See Cabasug*, 2013 WL 6842938, at *6-7.  The December 27, 2013 Order first rejected Plaintiffs' argument that Viad failed to sufficiently raise the argument that it was not the successor to BLH-DE.  *Id.* at *7-8.  Addressing the substantive arguments, the December 27, 2013 Order next determined that Plaintiffs had not raised a genuine issue of material fact that Cabasug was exposed to any asbestos-containing products supplied or manufactured by GRC or BLH-PA given that these companies preceded Cabasug's employment by several years.  *Id.* at *9.  The December 27, 2013 Order further determined that Plaintiffs had not raised a genuine issue of material fact that Viad was the successor to BLH-DE or BLH, Inc., because these companies were mere subsidiaries of Viad's predecessor, Armour, and Plaintiffs articulated no basis to pierce the corporate veil.[1]  *Id.* at *9-10.

Plaintiffs now raise several points of error with the December 27, 2013 Order, each addressed to the determination that Plaintiffs had not established a genuine issue of material fact that Viad is liable for any asbestos-containing products provided by BLH-DE.  The court addresses these arguments in turn.

---

[1]  The December 27, 2013 Order detailed the corporate relationships between these various entities, and the court does not reiterate them here.  *See Cabasug*, 2013 WL 6842938, at *6-7.

5

### 1.    *Plaintiffs' Conflicting Arguments on Subsidiary Liability*

Plaintiffs raise two seemingly conflicting arguments directed to whether the court properly determined that Plaintiffs failed to carry their burden in establishing a basis to pierce the corporate veil between BLH-DE and Armour, Viad's alleged predecessor.  On the one hand, Plaintiffs argue that the court failed to properly take into consideration the evidence and argument Plaintiffs presented on this issue.  Doc. No. 812, Pls.' Mot. at 20-29.[2]  On the other hand, Plaintiffs argue that if they did not present sufficient evidence and argument on this issue, the court erred in determining that Viad's Motion for Summary Judgment adequately raised the argument that Viad is not liable for asbestos exposure attributable to BLH-DE.  *See id*. at 29-35.  Which is it?  Did Plaintiffs receive notice and adequately address the issue, or did Plaintiffs not receive proper notice?  Regardless, the court finds that both arguments lack merit.

### a.    *Whether Viad properly raised the argument that it is not liable for asbestos exposure attributable to BLH-DE*

Plaintiffs argue that "any perceived failure by Plaintiffs [to argue alter ego liability of Armour and BLH-DE] was simply the result of Viad's failure to properly put Plaintiffs on notice that it was disputing liability for BLH-DE's sale of

---

[2]  For example, the heading to Section III(B)(i) of Plaintiff's Motion for Reconsideration is "The [December 27, 2013] Order does not consider all of the relevant facts and argument placed in the record by Plaintiffs which shows that Armour was BLH-DE's Alter Ego."  Doc. No. 812, Pls.' Mot. at 20.

replacement parts to which Cabasug was exposed." Doc. No. 812, Pl.'s Mot. at 29. The December 27, 2013 Order addressed this argument in detail, and although Plaintiffs have made plain that they disagree with the court's analysis, mere disagreement is not a basis for reconsideration.[3] *See Haw. Stevedores, Inc.*, 363 F. Supp. 2d at 1269.

Rather, as explained in the December 27, 2013 Order, Viad specifically argued in its Motion for Summary Judgment that BLH-DE was a subsidiary of Armour, and that BLH-DE "is not a corporate predecessor to Viad," meaning that Viad is not liable for any liabilities of BLH-DE or BLH, Inc. *See Cabasug*, 2013 WL 6842938, at *8. This argument was sufficient to trigger Plaintiffs' burden to provide a basis for Viad's liability -- Viad did not have a burden in its Motion to rebut possible theories of liability that Plaintiffs may (or may not) raise. And Plaintiffs cannot seriously contend that they were not on notice of the alter ego issue -- they presented *pages* of argument that "the assets

---

[3] Despite arguing below that they raised a genuine issue of material fact that the corporate veil should be pierced between Armour and BLH-DE, Plaintiffs stretch their procedural argument so far as to assert that their lack of notice of Viad's argument "rises to the level of a violation of constitutional due process" and the December 27, 2013 Order is void as a matter of law under Federal Rules of Civil Procedure 59 and 60. Again, Plaintiffs' conflicting arguments belie their contentions of any constitutional violations. And in any event, Plaintiffs have now had multiple opportunities to raise their alter ego argument -- in opposition to Viad's Motion for Summary Judgment, at the December 23, 2013 hearing, and now on reconsideration. As explained below, even considering *all* of Plaintiffs' arguments on alter ego liability de novo, Plaintiffs have failed to establish a genuine issue of material fact supporting such theory.

and liability of Baldwin Lima Hamilton did not remain in the newly created subsidiary," Doc. No. 769, Pl.'s Opp'n at 25, and Plaintiffs assert elsewhere in their Motion for Reconsideration that this argument was directed precisely to this issue. *See* Doc. No. 812, Pl.'s Mot. at 22 ("In Pls.' Opp'n at 25-27, Plaintiffs clearly set forth arguments and evidence showing that not only did Armour intermingle assets with BLH-DE, but also that Armour assumed **all of BLH-DE's liabilities**.").[4]

As the December 27, 2013 Order explained, Plaintiffs' argument missed the applicable legal analysis, and it is neither Viad's nor the court's fault that Plaintiffs argued only that assets were transferred between BLH-DE and Armour and not that the corporate veil should be pierced. As their Opposition to the Motion for Summary Judgment makes clear, Plaintiffs were aware that they needed to establish a basis for liability based on BLH-DE, and the argument they chose to present simply fell short of the mark. The court thus rejects that the December 27, 2013 Order erred in determining that Viad raised the issue of successor liability to BLH-DE.[5]

---

[4] As explained below, Plaintiffs' assertion that Armour intermingled evidence and assumed all of BLH-DE's liabilities is wholly unsupported by the record.

[5] And even if there were any error (which the court does not find), such error is harmless where the court finds below that even considering *all* of Plaintiff's arguments on successor

(continued...)

8

b.    *Plaintiffs' alter ego evidence and argument*

In contrast to their argument that they were not on notice of the successor liability issue, Plaintiffs argue that the court erred in finding that Plaintiffs failed to carry their burden in establishing a basis to pierce the corporate veil between BLH-DE and Armour, Viad's alleged predecessor.  Specifically, after finding that Viad had sufficiently raised the argument that it was not liable for asbestos exposure attributable to BLH-DE, the December 27, 2013 Order found that "Plaintiffs have failed to explain in any reasoned manner how any liabilities of BLH-DE and/or BLH, Inc. are attributable to Viad where BLH-DE and/or BLH, Inc. were only subsidiaries of Armour and where Viad was Armour's corporate successor." *Cabasug*, 2013 WL 6842938, at *9.  Although Plaintiffs in their Opposition presented some evidence of asset transfers between Armour and BLH-DE, the December 27, 2013 Order explained that Plaintiffs failed to present any argument explaining how these transfers warranted piercing the corporate veil. Indeed, nowhere in Plaintiffs' Opposition did they outline the legal framework for piercing the corporate veil or explain how the evidence they presented raises a genuine issue of material fact under the framework.  The December 27, 2013 Order

_____

[5](...continued)
liability de novo (presented in full in their Motion for Reconsideration) they have failed to raise a genuine issue of material fact.

admonished that it "will not forage through the record, speculate as to what arguments the evidence might support, or make Plaintiffs' arguments for them." *Id.* at *10.

Plaintiffs argue that this determination was in error in light of the evidence presented in their Opposition supporting piercing the corporate veil (despite the lack of argument in the brief itself), as well as their argument presented at the December 23, 2013 hearing that this evidence supports piercing the corporate veil. Plaintiffs further use their Motion for Reconsideration as (an improper) vehicle to articulate the alter ego argument they failed to make previously. The court rejects Plaintiffs' argument on several grounds.

First, as the December 27, 2013 Order explained, the burden was on Plaintiffs to establish that the corporate veil should be pierced. In other words, once Viad argued that BLH-DE was the mere subsidiary of Armour, Plaintiffs had the burden to rebut this assertion by presenting argument that the corporate veil should be pierced. There was no error (let alone manifest error) in the court's determination that Plaintiffs failed to carry this burden where they submitted some evidence of corporate transfers between BLH-DE and Armour, yet completely failed to offer any *argument* explaining how this evidence fits within the framework for piercing the corporate veil. And the court certainly need not

10

address new legal arguments presented for the first time in a Motion for Reconsideration. *See Fabrica de Muebles J.J. Alvarez, Incorporado*, 682 F.3d at 33; *Kona Enters., Inc.*, 229 F.3d at 890.

But even if the December 27, 2013 Order did err in dismissing Plaintiffs' proffered alter ego evidence without itself applying the evidence to the proper framework, the court explains, on a de novo review and based upon *all* of Plaintiffs' arguments and evidence now presented, why Plaintiffs have failed to raise a genuine issue of material fact that the corporate veil should be pierced between Armour and BLH-DE.

As the December 27, 2013 Order explained, *see Cabasug*, 2013 WL 6842938, at *10, the test for piercing the corporate veil under admiralty law is well established -- a court sitting in admiralty "may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant" where the "controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (quoting *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)). The corporate veil may be pierced "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter

11

ego was actually carrying on the controlling corporation's business instead of its own." *Id.* (citing *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)).  "To determine whether an individual so dominated and disregarded a corporate entity's corporate form, a court may consider several factors, including: '(1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements for the corporation.'" *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989)).

In their Motion for Reconsideration, Plaintiffs restate this legal framework, and then argue that the facts they presented on summary judgment establish each of the elements for piercing the corporate veil.  Although Plaintiffs now at least present the correct argument, it finds no support in their evidence.

Indeed, much of Plaintiffs' alter ego argument is based on wholesale misstatements of their evidence.  The most egregious is Plaintiffs' assertion that "the most important piece of evidence" supporting piercing the corporate veil is the admission by Viad's corporate representative that BLH-DE was "a mere 'corporate shell.'"  Doc. No. 812, Pls.' Mot. at 25.  Plaintiffs argue that this is an admission "that the entire purpose behind the creation of BLH-DE was to have a corporate

shell into which [Armour] could intermingle assets and liabilities." *Id.* at 26.

Contrary to Plaintiffs' argument, Viad's corporate representative testified as

follows regarding Armour's merger with BLH-PA and creation of BLH-DE:

> Q:     Well, tell me how you viewed this transaction as having occurred?
> A.     Well, as I said it, it was a squeeze-out merger to eliminate the minority shareholders in the Pennsylvania corporation.  And the whole purpose of the merger was to do only that.  A new Delaware corporation was created with BLH's name, and the instant the merger took place, all the assets and liabilities were transferred into the Delaware corporation of BLH.
> Q.     The BLH Delaware corporation had been created prior to this time?
> A.     That's correct.
> Q.     But prior meaning a matter of days or weeks?
> A.     That's correct.
> Q.     And its creation was simply to have a corporate shell into which to transfer the assets of the existing BLH Pennsylvania corporate entity?
> A.     Assets, liabilities, business, yes.

 Doc. No. 778-24, Pls.' Ex. 22 at 63-64.

In other words, Viad admitted that Armour created a new corporation,

BLH-DE, as a "shell" to take BLH-PA's assets and liabilities, and this admission

suggests nothing about the corporate separateness between BLH-DE and its parent

Armour or that BLH-DE was created as a fraudulent entity to intermingle assets

with Armour.  The use of the term "corporate shell" in this context clearly meant

that BLH-DE was created to accept the assets and liabilities of BLH-PA, not to

create an entity to evade taxes or to "intermingle" assets with its parents.

Another misstatement by Plaintiffs is their assertion that "[w]hile Armour initially transferred BLH's assets into a newly created wholly-owned subsidiary, BLH-DE, those same assets were almost immediately transferred back to Armour."  Doc. No. 773, Pls.' Concise Statement of Facts ¶ 25.  In other words, Plaintiffs assert that after Armour created BLH-DE with BLH-PA's assets and liabilities, Armour transferred back to itself all of BLH-DE's assets.  Contrary to Plaintiffs' broad assertions, the only evidence of transfers is a 1965 dividend payment by BLH-DE to Armour in the amount of  $15,000,000 and a transfer of BLH-DE's reserve for contingencies totaling $576,923.  *See* Doc. No. 775-12, Pls.' Ex. J.  But even with these transfers, BLH-DE still held significant assets.  *See* Doc. No. 775-10, Pls.' Ex. H (showing a total of $1,813,313 in cash and $116,511,488.00 in total assets).  Thus, Plaintiffs' assertion that Armour somehow used BLH-DE as a dumping ground for BLH-PA's liabilities while Armour took the assets finds no support in the record.

A final misstatement is Plaintiffs' assertion that in 1969 Armour "acknowledged responsibility for the liabilities of BLH-DE," and that "Armour assumed all of BLH-DE's liabilities."  *See* Doc. No. 812, Pls.' Mot. at 22-23, 27.  Contrary to Plaintiffs' assertion, Armour recognized in its 1969 Annual Report

14

liabilities of *BLH-PA* (*i.e.*, not BLH-DE) that arose before the merger, and satisfied those liabilities in 1969. *See* Doc. No. 773, Pls.' Concise Statement of Facts ¶ 28. Armour's recognition of pre-merger liabilities for BLH-PA has no bearing on BLH-DE's post-merger liabilities.

Setting aside Plaintiffs' misrepresentations, the actual facts presented do not suggest any intermingling of funds between Armour and BLH-DE, undercapitalization of BLH-DE, or failure to maintain formal legal requirements for BLH-DE. Rather, the facts Plaintiffs put forward suggest nothing more than a completely ordinary parent/subsidiary relationship.

For example, Plaintiffs assert that BLH-DE's payment to Armour of a $15,000,000 dividend and transfer of its reserve for contingencies totaling $576,923 "drain[ed] BLH of its cash," and show Armour's "domination over its subservient subsidiary, BLH-DE." Doc. No. 812, Pls.' Mot. at 23. What Plaintiffs ignore, however, is that BLH-DE's federal income tax return for this period shows a surplus of $75,046,995.68, *see* Doc. No. 775-6, Pls.' Ex. D, and that the dividend payment to BLH-DE's shareholders (*i.e.*, Armour), still left BLH-DE with $1,813,313 in cash and total assets of $116,511,488.00. *See* Doc. No. 775-10, Pls.' Ex. H. This evidence therefore does not show, as propounded by Plaintiffs, that Armour left BLH-DE "an empty shell without resources to satisfy a judgment

against [BLH-DE]." Doc. No. 812, Pls.' Mot. at 26. Instead, it shows a wholly

regular business practice -- the payment of a dividend from a subsidiary to a parent

corporation.

Plaintiffs also rely on an October 29, 1965 memorandum stating that

"[s]ubsequent to July 2, 1965 B-L-H and subs will not accrue Federal income taxes

on financial statements, and it is understood that all such accruals and related

payments will be made in Chicago." Doc. No. 775-11, Pls.' Ex. I. Plaintiffs assert

that this memorandum shows that BLH-DE was undercapitalized such that Armour

had to pay BLH-DE's taxes for it. Doc. No. 812, Pls.' Mot. at 27. Again,

Plaintiffs mis-state the evidence -- a parent corporation may file a consolidated

federal income tax return on behalf of itself and its subsidiaries, which includes the

income of the parent and each of its domestic subsidiaries. Although each

corporate entity in the consolidated group first calculates its taxes as if it were a

stand-alone taxpayer (with certain consolidating adjustments), the gains and losses

are combined to determine the consolidated group's federal income tax liability.

*See*, *e.g.*, *In re Marvel Entm't Grp.*, 273 B.R. 58, 64 (D. Del. 2002) (citing Crestol,

Hennessey & Yates, *The Consolidated Tax Return* at 1-2 (Warren, Gorham &

Lamont 5th ed. 1998)).

Finally, Plaintiffs argue that the corporate veil should be pierced

16

because when BLH-DE dissolved, all proceeds of the dissolution went to Armour. Doc. No. 812, Pls.' Mot. at 27.[6] This fact is unsurprising -- Armour was BLH-DE's sole shareholder and thus was entitled to the proceeds.

In sum, taking into consideration Plaintiffs' evidence and *all* of the arguments they presented, the court finds that Plaintiffs have fallen well short of raising a genuine issue that Armour used BLH-DE to perpetrate a fraud or that Armour so dominated and disregarded BLH-DE's corporate form that BLH-DE was actually carrying on Armour's business instead of its own. *See Chan*, 123 F.3d at 1294. The court therefore rejects that the December 27, 2013 Order erred in finding that Plaintiffs did not adequately raise the alter ego argument, and further finds on de novo review that Plaintiffs failed to establish a genuine issue of fact that the corporate veil should be pierced between Armour and BLH-DE.

## 2.    *Excusable Neglect*

In another argument "in the alternative," Plaintiffs contend that the December 27, 2013 Order should be set aside pursuant to Rule 60(b) because any failure on Plaintiffs' part to set forth a reasoned argument on piercing the corporate

---

[6] In another overstatement, Plaintiffs go so far as to assert that Armour caused BLH-DE to dissolve in the 1970s by draining all of BLH-DE's assets. Doc. No. 812, Pls.' Mot. at 27. The only asset transfers Plaintiffs put forward, however, are those described above in 1965, and Plaintiffs offer no explanation how such transfer would cause BLH-DE to dissolve many years later.

veil "was at most the result of mistake, inadvertence, surprise, or excusable

neglect."  Doc. No. 812, Pls.' Mot. at 35.

Rule 60(b) does not apply to the December 27, 2013 Order.  By its

own terms, Rule 60(b) allows a court to "relieve a party or its legal representative

from a *final* judgment, order, or proceeding."  Fed. R. Civ. P. 60(b) (emphasis

added).  "The addition of the qualifying word 'final' emphasizes the character of

the judgment, orders or proceedings from which Rule 60(b) affords relief; . . .

interlocutory judgments are not brought within the restrictions of the rule."  1946

Advisory Comm. Note to Fed. R. Civ. P. 60(b); *see also* 12 James Wm. Moore et

al., Moore's Federal Practice § 60.23 ("The standard test for whether a judgment is

'final' is usually stated to be whether the judgment is sufficiently 'final' to be

appealed."); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir.

2006) ("[Rule 60(b),] by its terms limited to 'final' judgments or orders, is

inapplicable to interlocutory orders.").  Thus, "an order that adjudicates less than

all claims" is not a final judgment.  *California ex rel. Cal. Dep't of Toxic*

*Substances v. Campbell*, 138 F.3d 772, 776-77 (9th Cir. 1998).  Further, "[o]rders

granting partial summary judgment are, absent special circumstances, not

appealable final orders . . . because partial summary judgment orders do not

dispose of all claims and do not end the litigation on the merits."  *Williamson v.*

18

*UNUM Life Ins. Co. of Am.*, 160 F.3d 1247, 1250 (9th Cir. 1998).

And even if Plaintiffs could raise the argument of excusable neglect at this time, Plaintiffs have provided no basis for relief from the December 27, 2013 Order.  Plaintiffs simply failed to make the correct argument in attempting to rebut Viad's argument that it is not the successor to BLH-DE.  Such neglect is not excusable neglect.  *See Pincay v. Andrews*, 389 F.3d 853, 857 (9th Cir. 2004) ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."); *see also Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043-44 (9th Cir. 1992) ("Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)" (internal quotation omitted)).

Unhappy with the December 27, 2013 Order, Plaintiffs essentially seek a do-over.  To allow Plaintiffs this opportunity would allow endless litigation as parties attempt to refine their losing arguments.  Plaintiffs' request only highlights this problem -- they offer no reason to suggest that giving them yet another opportunity to address alter ego liability (after their Opposition, argument at the December 23, 2013 hearing, and their Motion for Reconsideration) would change the result of the December 27, 2013 Order.  Indeed, the court has now addressed Plaintiffs' proffered evidence and argument on alter ego liability

(articulated for the first time in their Motion for Reconsideration), and finds that it fails to raise a genuine issue of material fact.

### 3.      *Whether Viad Was on Notice that Plaintiffs Asserted Claims Against It Based on BLH-DE*

Finally, Plaintiffs take issue with a single sentence in the December 27, 2013 Order, stating that "Plaintiffs argued for the first time in their Opposition to Viad's Motion for Summary Judgment that Viad is liable based on Cabasug's exposure to asbestos-containing replacement parts provided by 'BLH.'" *See* Doc. No. 812, Pls.' Mot. at 10; *Cabasug*, 2013 WL 6842938, at *7. Plaintiffs do not dispute that their Third Amended Complaint did not allege liability based on any BLH entity, and instead argue that this statement in the December 27, 2013 Order is incorrect where Viad was on notice of these claims based on Plaintiffs' discovery responses and discussions between counsel.

Although the parties both devote pages of their briefs on this issue, Plaintiffs' argument -- even if true -- is irrelevant to the December 27, 2013 Order's ultimate ruling. The December 27, 2013 Order made this statement to explain Viad's position that none of Plaintiffs' previous Complaints (they have amended it three times) ever asserted liability against Viad based on any BLH entity (as opposed to GRC). *Cabasug*, 2013 WL 6842938, at *7. But the December 27, 2013 Order did not base its ruling on this Viad argument. *See id.* at

20

*8 ("Setting aside whether Plaintiffs can even assert such new claims at this juncture, the court finds that Viad's Motion sufficiently raised the argument that Viad is not liable for any asbestos exposure attributable to BLH–DE (or its successor, BLH, Inc .).").

Because the court made no determination as to whether Plaintiffs can assert claims against Viad based on BLH-DE or BLH Inc., Plaintiffs' dispute with the court's characterization of the record provides no basis for reconsideration. And in any event, it is a true statement -- the first time Plaintiffs ever asserted before this court that its claims against Viad were based on BLH-DE and BLH Inc. was in opposition to Viad's Motion for Summary Judgment.

The court therefore DENIES Plaintiffs' Motion for Reconsideration.

**B.     Viad's Motion for Reconsideration**

Viad seeks reconsideration of a limited portion of the December 27, 2013 Order, which states that "Viad concedes that it is the successor to Armour." *Cabasug*, 2013 WL 6842938 at *6. Viad asserts that Viad's concession was made for the limited purpose of its Motion for Summary Judgment, and that it does not concede for all purposes or future actions that it is a successor corporation to Armour. Doc. No. 809, Viad Mot. at 2. The court agrees that reconsideration is appropriate -- in its Motion for Summary Judgment, Viad explicitly stated that

21

"[f]or purposes of this motion only, Viad will not contest that it is a corporate successor to Armour DE."  Doc. No. 694-1, Viad Mot. at 22 n.4.

The court therefore GRANTS Viad's Motion for Reconsideration. The court clarifies that Viad conceded that it was the successor to Armour for purposes of its Motion for Summary Judgment only.

## IV.  CONCLUSION

Based on the above, the court DENIES Plaintiffs' Motion for Reconsideration, Doc. No. 812, and GRANTS Viad's Motion for Reconsideration, Doc. No. 809.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 7, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cabasug et al. v. Crane Co. et al.*, Civ. No. 12-00313 JMS/BMK, Order (1) Denying Plaintiffs' Motion to Reconsider or Modify Order Granting Defendant Viad Corp's Motion for  Summary Judgment, Or, in the Alternative, to Set Aside, Doc. No. 812; and Granting Defendant Viad Corp's Motion for Reconsideration of a Limited Portion of the Court's Order Granting Summary Judgment Pursuant to Federal Rule of Civil Procedure 60(a), Doc. No. 809